CALDWELL, executor, *et al. v.* NORTHWEST ATLANTA BANK *et al.*

371

No. 14107.   July 14, 1942.   Rehearing denied July 25, 1942.

*Augustine Sams,* for plaintiffs.

*Hugh B. Cobb, C. D. Stewart,* and *C. N. Davie,* for defendants.

JENKINS, Justice. ■ "Every deed to secure debt shall be recorded in the county where the land conveyed lies. . . Deeds or bills of sale not recorded remain valid against the persons executing them. The effect of failure to record such deeds and bills of sale shall be the same as is the effect of failure to record a deed of bargain and sale." Code, § 67-1305. The statute with reference to the record of a deed of bargain and sale is as follows: "Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land lies. The record may be made at any time, but such deed loses its priority

over a subsequent recorded deed from the same vendor, taken without notice of the existence of the first." § 29-401. It thus appears that the penalty of failure to record a deed of bargain and sale has reference only to the rights of a subsequent vendee, taking a deed from the same vendor without notice of the existence of the prior unrecorded deed; and it has been held that the provision of the Code, § 67-2501, declaring that "deeds, mortgages, and liens of all kinds, which are required by law to be recorded in the office of the clerk of the superior court, shall, as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office," has reference only to liens arising by contract, and not to judgments. *Donovan* v. *Simmons,* 96 *Ga.* 340 (22 S. E. 966); *Griffith* v. *Posey,* 98 *Ga.* 475, 476 (25 S. E. 515). Thus, under the original recording laws, it was held that the failure to record a security deed did not postpone the deed to a judgment obtained after its execution, any more than the failure to record an ordinary deed of bargain and sale. *Phinizy* v. *Clark,* 62 *Ga.* 623 (3), 627; *Gibson* v. *Hough,* 60 *Ga.* 588, 593; *Lowe* v. *Allen,* 68 *Ga.* 225 (*b*), 227; *Davie* v. *McDaniel,* 47 *Ga.* 195 (5); *Smith* v. *Worley,* 10 *Ga. App.* 280 (2), 282 (73 S. E. 428). But under the subsequent recording act of 1889 (Ga. L. 1889, p. 106; Civil Code of 1910, § 3320), it was held that a judgment would take priority over an unrecorded security deed. *Saunders* v. *Citizens First National Bank,* 165 *Ga.* 558, 565 (142 S. E. 127); *Coley* v. *Altamaha Fertilizer Co.,* 147 *Ga.* 150 (93 S. E. 90). However, under the present recording act of 1931 (Ga. L. 1931, p. 153), as embodied in the Code, § 67-1305, providing that "the effect of failure to record such [security] deeds and bills of sale shall be the same as is the effect of failure to record a deed of bargain and sale," the result is to restore the rule as it orginally existed, thus giving priority to the unrecorded security deed except as against subsequent deeds by the same grantor. See *Walker County Fertilizer Co.* v. *Napier,* 184 *Ga.* 861, 865 (193 S. E. 770).

■ Under the Code, § 67-2002, in order "to make good the liens specified in section 67-2001" in favor of materialmen and others, "they must be created and declared in accordance with the following provisions, and on failure of any of them the lien shall

not be effective: . . The recording of his claim of lien within three months after the completion of the work, or within three months after such material . . is furnished, in the office of the clerk of the superior court . . [and] the commencement of an action for the recovery of the amount of his claim within twelve months from the time the same shall become due." It has been held that after the lien of a materialman is thus made good, it then attaches from the time the materialman commenced to deliver material. *Picklesimer* v. *Smith,* 164 *Ga.* 600 (139 S. E. 72). But it has also been held, with reference to a bona fide purchaser of the absolute title under an unrecorded deed, that such a purchaser, with no actual notice at the time his conveyance was executed as to a then unrecorded materialman's lien upon the same property, takes the property free of such lien. *Ashmore* v. *Whatley,* 99 *Ga.* 150 (24 S. E. 941); *Oglethorpe Savings & Trust Co.* v. *Morgan,* 149 *Ga.* 787, 790 (102 S. E. 528); *Willingham-Tift Lumber Co.* v. *Barnes,* 147 *Ga.* 209 (2) (93 S. E. 201); *Dwight* v. *Acme Lumber & Supply Co.,* 186 *Ga.* 825 (199 S. E. 178); *Frazer* v. *Jackson,* 46 *Ga.* 621. The same rule has been applied, and the same priority allowed, as to the vendee under an unrecorded security deed, whose rights under the present recording statutes, as pointed out in paragraph 1 above, are the same as the rights of a purchaser of the absolute title. *Milner* v. *Wellhouse,* 148 *Ga.* 275 (96 S. E. 566); *Guaranty Investment Co.* v. *Athens Engineering Co.,* 152 *Ga.* 596 (6, 7) (110 S. E. 873); *Picklesimer* v. *Smith,* supra.

■ Under the preceding rules, since the security deed was executed before the delivery of any material, and therefore necessarily before the record of the materialmen's claims of lien, no question of notice to the grantee as to the materialmen's claims of lien at the time the security deed was executed would be involved. But even if the failure of the grantee to record his security deed until between the time the first material was furnished and the record of the materialmen's claims of lien could suffice to make relevant the rule as to actual notice of such a claim, then the "actual notice" required of the grantee in the deed in such a case would be "such notice as is positively proved to have been given to him directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put

376

him upon inquiry." *Picklesimer* v. *Smith,* supra. See *Williams* v. *Smith,* 128 *Ga.* 306, 310 (57 S. E. 801) ; 30 Am. Jur. 238-241, §§ 12, 13 ; 46 C. J. 546, 547, §§ 33, 34. A mere averment, as in this case, that a materialman on a certain date "furnished and delivered material on the premises," without any other fact, will not suffice to support a bare legal conclusion by the pleader that *"such delivery* constituted actual implied notice" to the security-deed holder "that material was being furnished and [as to] the plaintiffs' claims of lien." See *West Lumber Co.* v. *McPherson,* 173 *Ga.* 53, 54 (159 S. E. 868) ; 40 C. J. 292, 293, §§ 371, 330.

Accordingly, in the instant equitable action by materialmen against the grantee in a security deed and against the purchaser at a foreclosure sale under that deed, the petition having failed to show any actual notice to the defendant holders under the security deed as to the furnishing of materials by the plaintiffs at the time the security deed was executed, or during the time before it was recorded, and it appearing that at the time the security deed was executed and recorded the materialmen's claims of lien remained unrecorded, the priority of the holders under the security deed was properly sustained.

■ The fact that, as alleged, the holder of the security deed did not advance to the debtor all of the money secured by the deed at the time of its execution would not affect the priorities of the parties. *Picklesimer* v. *Smith,* supra.

■ The petition of the materialmen, while claiming priority over the security deed, does not attack its validity. However, cancellation is sought as to the subsequent deed from the bank holding the security deed, to the defendant purchaser under a foreclosure sale by virtue of a power in the deed, on the ground that the foreclosure deed was made to hinder, delay, and defraud creditors, including petitioners, and that the acts of the deed holders and of the debtor constituted a fraudulent conspiracy. Even could it possibly be assumed that a foreclosure deed executed by a bona fide creditor, by virtue of an irrevocable power of attorney in its security deed, could legally constitute a fraudulent conveyance within the meaning of the Code, § 28-201, enumerating "acts by *debtors"* that are voidable against creditors, the petition wholly fails to show facts to indicate fraud. Not only are the good faith and validity of the original security deed not attacked, but it is

manifest that the foreclosure deed was neither "secret," as alleged by a mere conclusion, nor voluntary, since the facts set forth in the petition show that the deed was made after a public sale, for a consideration of $1,500, and that it was recorded on the day of its date. Nor is there any averment that the consideration did not represent the fair market value of the property; or that any defendant was or is insolvent. In so far as any participation by the debtor in the foreclosure sale is alleged, fraud on his part is expressly negatived by the averment that he was informed by the security-deed creditor as to certain purposes of the sale, which were legitimate. The decisions in *Moncrief Furnace Co.* v. *Northwest Atlanta Bank,* 193 *Ga.* 440 (19 S. E. 2d, 155), and *Sweat* v. *Arline,* 186 *Ga.* 460 (197 S. E. 893), were based on wholly different averments. In the former case the deed was voluntary; and in both cases the debtor was a party to alleged fraudulent transfers and acts.

■ Whether or not an alleged holder of a materialman's lien could be heard to attack a foreclosure sale by a creditor under a power in a security deed, on the ground that there was a chilling of the bidding or like irregularity, in the absence of any attack on the validity of the instrument or the right of the creditor to sell under the power (see *Williams* v. *Williams Co.,* 122 *Ga.* 178, 180, 50 S. E. 52, 106 Am. St. R. 100), the petition contains no sufficient averment that the bidding was chilled so as to prevent the property from bringing its fair value. There are general allegations that the purchaser was an employee or agent of the bank holding the security deed; and that the alleged sale was "really a sale to the defendant bank." Even if these averments could suffice to show any illegal act by such parties, bad faith is negatived by the deed of purchase itself, showing the alleged agent to be the grantee; and by the allegation that the grantee actually executed his note to the bank for the purchase-money, the good faith of which loan instrument is not attacked. The averment that the bank accepted a note instead of cash from the purchaser and the sheriff would not show a chilling of the bidding, or otherwise invalidate the sale, especially since it is not made to appear that this was done by prearrangement, or that any bidder was informed of such a prearrangement, or that it would be limited to the one person, so as to show that the bidding was thus in any wise affected.

378

See generally, in this connection, as to what chilling of the bidding must be shown to invalidate a public sale, and who may attack the sale on that ground: *Universal Chain Theatrical Enterprises* v. *Oldknow,* 176 *Ga.* 492 (2), 496 (168 S. E. 239) ; *Ruis* v. *Branch,* 138 *Ga.* 150, 152 (74 S. E. 1081, 42 L. R. A. (N. S.) 1198), and cit.; Code, § 39-1316.

█ Under the preceding rulings, the court did not err in dismissing the action of the materialmen on general demurrer.

*Judgment affirmed. All the Justices concur.*